**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

MELISSA CASTLEBERRY,

    Petitioner,

v.                                               Case No. 8:13-cv-1348-T-36TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner Melissa Castleberry, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1). She challenges her convictions entered in 2010 by the Circuit Court for the Tenth Judicial Circuit, Polk County. Respondent filed a response (Dkt. 11), to which Castleberry filed a reply (Dkt. 14). In accordance with an order of the Court (Dkt. 17), Respondent filed a supplemental response (Dkt. 18). Castleberry did not file a reply to the supplemental response. Upon review, the petition must be denied.

## PROCEDURAL HISTORY

A jury convicted Castleberry of trafficking in 28 grams or more of methamphetamine (count one), possession of drug paraphernalia (count two), and actual or constructive possession of a structure used for trafficking, sale, or manufacture of controlled substances (count three). (Dkt. 13, Ex. 1, pp. 71-72.) She was sentenced to concurrent terms of incarceration of seven years on count one, three years on count three, and one year on

count two. (*Id.*, pp. 101-05.) The state appellate court *per curiam* affirmed Castleberry's judgments and sentences. (Dkt. 13, Ex. 4.)

Castleberry filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, alleging that the convictions were invalid under the decision entered in *Shelton v. Sec'y, Dep't of Corr.*, 802 F.Supp.2d 1289 (M.D. Fla. 2011). (Dkt. 13, Ex. 5.) The state court denied her motion. (Dkt. 13, Ex. 9.) The state appellate court *per curiam* affirmed the order of denial. (Dkt. 13, Ex. 13.) Castleberry also filed a successive motion for postconviction relief, arguing that trial counsel was ineffective for not requesting a jury instruction on the affirmative defense of lack of knowledge of the illicit nature of the substance. (Dkt. 20, Ex. 23.) The state court summarily denied her successive motion. (Dkt. 20, Ex. 25.) In addition, Castleberry filed a habeas petition alleging ineffective assistance of appellate counsel. (Dkt. 13, Ex. 15.) The state appellate court denied her petition without comment. (Dkt. 13, Ex. 16.) Castleberry then filed her federal habeas petition. Respondent raises no challenge to the timeliness of the petition.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings

unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the

correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . ") (citations omitted). Review of the state court decision is limited to the record that was before the state court. *Id*.

Castleberry bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C.

§ 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" her claim in each appropriate state court and alerts

that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at her trial created the possibility of prejudice but that they worked to her actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 167-70 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of

acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## DISCUSSION

Castleberry was charged with violating §§ 893.135, 893.147, and 893.1351, Fla. Stat. (Dkt. 13, Ex. 1, pp. 11-13.) In the single claim in her federal habeas petition, Castleberry argues that trial counsel was ineffective for failing to request a jury instruction on the affirmative defense of lack of knowledge of the illicit nature of the controlled substance under § 893.101, Fla. Stat. Specifically, subsection (2) of that statute provides:

> The Legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter.

In addition, the standard jury instruction for trafficking in controlled substances contains an instruction on the affirmative defense of lack of knowledge of the illicit nature of a controlled substance, which may be given if a defendant has raised this defense. Fla. Std. Jury Inst. (Crim.) 25.11.

Castleberry's claim that trial counsel was ineffective for not requesting this instruction is procedurally defaulted, and therefore barred from federal habeas review, on two bases. First, Castleberry did not properly raise this argument in state court when she brought the claim in a successive postconviction motion under Rule 3.850. The state court found this was a sufficient basis to deny the claim:

> Defendant has submitted what she acknowledges is a successive motion for relief under Fla. R. Crim. P. 3.850. . . . The sole issue raised in [Castleberry's first] motion was the constitutionality of Florida's controlled substance statutes, which had been called into question by *Shelton v. Florida*, a federal court opinion. . . .
> Defendant's current motion also raises a single issue, *viz.*, whether her defense attorney was ineffective for not requesting a jury instruction on the question of whether Defendant lacked knowledge of the illicit nature of

>   the controlled substance "or its presence." At the outset the Court must observe, first, that the motion fails to explain why this issue could not have been raised previously. There is no reason for defendant to have placed all her apples in the *Shelton* basket because, even if the *Shelton* issue did not prove successful Defendant would still have been allowed to advance her ignorance of the substance's character as an affirmative defense. Accordingly, the Court believes her motion can be denied for this reason alone.

(Dkt. 20, Ex. 25, pp. 1-2.)

Florida Rule of Criminal Procedure 3.850(h)(2) provides that a court may dismiss a successive motion raising new and different grounds if it finds "there was no good cause for the failure of the defendant . . . to have asserted those grounds in a prior motion." Accordingly, the state court rejected this claim on an independent and adequate state basis. There is no indication that the rule allowing the rejection of successive postconviction pleadings was intertwined with federal law, or was applied to Castleberry's case in an arbitrary or unprecedented or manifestly unfair manner. *See Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying upon a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair" manner).[1]

Castleberry's failure to raise the claim in accordance with established state

---

[1] The state court's alternative merits review does not foreclose the application of the procedural default to bar review of the claim. *See Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) ("[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar. . .").

procedure renders it procedurally defaulted. *See Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim" unless the petitioner establishes cause and prejudice or fundamental miscarriage of justice exception). Castleberry does not establish the applicability of either exception to overcome the default.

Even if Castleberry's ineffective assistance claim was properly presented to the postconviction court, it would still be unexhausted because she did not appeal the postconviction court's rejection of it. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial."). Castleberry therefore did not invoke one complete round of Florida's established review process to allow the state courts to review her ineffective assistance of counsel claim. *See Pruitt*, 348 F.3d at 1358-59. She cannot return to state court to file an untimely, successive collateral appeal. *See* Fla. R. App. P. 9.141; Fla. R. Crim. P. 3.850(k). This renders the claim procedurally defaulted. *See Smith*, 256 F.3d at 1138. And Castleberry does not argue or demonstrate that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. *See id*. Accordingly, her failure to file a collateral appeal also leads to a procedural default of the claim.

Notwithstanding the default, Castleberry's claim is without merit. Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as

the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Castleberry must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. A petitioner cannot meet her burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the

adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

In Castleberry's case, law enforcement officers executed a search warrant at a residence owned by Castleberry's boyfriend, David Hurley. Castleberry had lived there at least part of the time for about ten years. (Dkt. 13, Ex. 1A, pp. 172-73; Ex. 1B, p. 250.) When the warrant was executed, Castleberry was inside the home and Hurley and two other men were on the property outside. (Dkt. 13, Ex. 1A, p. 100-01, 142-43, 161-64.)

Police found 60.1 grams of methamphetamine inside a food container in the refrigerator. (*Id.*, pp. 105-06, 186-87, 219-20.) They also found what appeared to be drug paraphernalia inside two different pouches in the house. (*Id.*, pp. 102-04, 120-23.) Detective Metz interviewed Castleberry. She admitted that she previously sold methamphetamine from the house, and that she knew there was methamphetamine in the house. (*Id.*, pp. 168, 173-75, 177, 180-81.) At trial, however, Hurley testified that one of the other men present at the time the warrant was executed had just brought the methamphetamine to the house no more than ten minutes before police arrived. (*Id.*, pp. 239-40.) Therefore, he testified, Castleberry did not know that the methamphetamine was in the refrigerator. (*Id.*, p. 240.)

In alternatively reviewing the merits of Castleberry's successive postconviction motion, the state court found that counsel was not ineffective for failing to seek a jury instruction on the affirmative defense of lack of knowledge of the illicit nature of the substance:

> [M]ethamphetamine and other drug paraphernalia were recovered from the residence [Castleberry] shared with her boyfriend, David Hurley, pursuant to a search warrant and . . . this warrant was executed by a Polk County Sheriff's Department task force that utilized officers from other agencies as well. While several witnesses described items they recovered from various spots in the house, the only law enforcement witness whose testimony is of particular assistance in the proceedings at bar is Lake Wales Detective Benjamin Metz. . . . Briefly summarized, Detective Metz, who was the officer responsible for obtaining the warrant, administered Miranda warnings to four individuals found in or near the house at the time of the search. Defendant initially admitted selling methamphetamine from the home, but denied knowing where it was kept. During a second interview, this one recorded, she admitted having sold drugs as recently as a week prior, and further stated the methamphetamine was usually hidden inside a dartboard. The recording was played for the jury.
>
> [ ] While Defendant did not testify at her trial, she did call Mr. Hurley as a defense witness. Again, the Court does not find it necessary to attach his testimony, because it is consistent with what Defendant represents in her

> motion, *viz.*, that the items found in the home belonged either to him or to his friends and that Defendant had no knowledge of them. Hurley's testimony is nevertheless of some import to the matter at hand. First, it clarifies that Defendant never raised the affirmative defense that she did not know the illicit nature of the substance found in her home. Second, the jury obviously did not believe Mr. Hurley, and the Defendant's confession is a likely explanation why. If Detective Metz's testimony (bolstered by Defendant's own recorded statements) is accepted as accurate, Defendant know [sic] *both* that the substance was present and that it was methamphetamine. Accordingly, the record conclusively shows she would not have been entitled to the jury instruction she now faults counsel for not requesting, and therefore that counsel clearly did not render ineffective assistance for not requesting it, and, instead, pursuing the theory that Defendant was unaware of the *presence* of the unlawful drugs.

(Dkt. 20, Ex. 25, pp. 2-3) (court's record citation omitted) (emphasis in original). Detective Metz's interview with Castleberry was presented to the jury. It reflects that Castleberry had knowledge of methamphetamine in the house:

| | |
|---|---|
| DETECTIVE METZ: | Is there any meth in the house - - |
| MS. CASTLEBERRY: | Yes. |
| DETECTIVE METZ: | That you know of? |
| MS. CASTLEBERRY: | Yes. |

(Dkt. 13, Ex. 1A, pp. 180-81.) Additionally, a review of the trial transcript reflects that Castleberry did not pursue the defense of lack of knowledge of the illicit nature of the substance. The record thus supports a finding that counsel was not ineffective for failing to request the instruction on this defense set forth in § 893.101, Fla. Stat. Additionally, the record further supports a finding that there is no reasonable probability a jury instruction on this defense would have changed the outcome of the proceedings. Castleberry does not show either deficient performance of counsel or resulting prejudice. She does not demonstrate that the state court's ruling was an unreasonable application of *Strickland*, or

was based on an unreasonable determination of the facts. Consequently, Castleberry is not entitled to relief on her federal habeas petition.

It is therefore **ORDERED** that Castleberry's petition (Dkt. 1) is **DENIED**. The Clerk is directed to enter judgment against Castleberry and to close this case.

It is further **ORDERED** that Castleberry is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of her habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Castleberry "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Castleberry has not made this showing. Finally, because Castleberry is not entitled to a certificate of appealability, she is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on March 14, 2016.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copy to:
Melissa Castleberry
Counsel of Record